## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re : | CHAPTER 11 |
| : | (Jointly Administered) |
| NEW CENTURY TRS HOLDINGS, INC,: | |
| et al.[1] : | Case No. 07-10416 (BLS) |
| Debtors : | |
| : | |
| ALFRED A. SILVA, : | Adv. Pro. No. 11-53199 (KJC) |
| : | (Re: D.I. 1, 2) |
| Plaintiff, : | |
| v. : | |
| : | |
| NEW CENTURY TRS HOLDINGS, INC,: | |
| et al. : | |
| Defendants : | |

### MEMORANDUM [2]

BY: KEVIN J. CAREY, UNITED STATES BANKRUPTCY JUDGE

Before the Court is the Motion of Alfred A. Silva, *pro se*, To Consider Proof of Claim Timely Filed (D.I. 2) (the "Proof of Claim Motion"). The New Century Liquidating Trust (the "Trust"), by and through Alan M. Jacobs, the Liquidating Trustee (the "Trustee"), filed an objection to the Proof of Claim Motion (D.I. 7). For the reasons set forth below, the Proof of Claim Motion will be denied.

---

[1] The Court approved joint administration of the chapter 11 cases of New Century TRS Holdings, Inc. and fourteen related entities by Order dated April 3, 2007 (D.I. 52). New Century Warehouse Corporation, a California corporation, filed a chapter 11 bankruptcy petition on August 3, 2007. The jointly administered debtors and New Century Warehouse Corporation are referred to jointly herein as the "Debtors."

By Order dated January 31, 2014 (D.I. 11340), this bankruptcy case was reassigned to Judge Brendan Linehan Shannon, although I retained certain matters under advisement (including this Adversary Proceeding) for decision.

[2] This Memorandum constitutes the findings of fact and conclusions of law required by Fed.R.Bankr.P. 7052. This Court has jurisdiction to decide the motion before it pursuant to 28 U.S.C. §1334 and §157(a). This is a core proceeding pursuant to 28 U.S.C. §157(b)(1) and (b)(2)(A) and (B).

## FACTS

(1)   <u>The Prepetition Loan Between the Debtors and Mr. Silva</u>

On or about August 16, 2006, Mr. Silva received a loan from the Debtors in the original principal amount of $340,000, secured by a lien against his real property located in Redlands, California. (Tr. 23:2 - 23:8).[3] Based upon a review of the Debtors' books and records, the Trustee determined that the Debtors sold their interest in Mr. Silva's loan to Morgan Stanley Mortgage Capital, Inc. on September 29, 2006.[4] (Tr. at 23:9-24:23, Trustee Exhibits 48, 49, 51, 52). On February 1, 2007, the Debtors transferred servicing of Mr. Silva's loan to Saxon Mortgage Services, Inc. (Tr. 26:6 - 26:18, Trustee Ex. 51).

(2)   <u>The Debtors' Bankruptcy Case</u>

On April 2, 2007, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. On June 8, 2007, the Debtors filed a motion pursuant to Fed.R.Bankr.P. 2002, 3003(c)(3) and 9007 asking the Court to fix the time within which proofs of claim may be filed (the "Debtors' Bar Date Motion") (D.I. 1173). After a hearing on the Debtors' Bar Date Motion, this Court entered an Order dated June 28, 2007 (the "Bar Date Order") establishing August 31, 2007 at 5:00 p.m. (prevailing Pacific Time) as the deadline for filing proofs of claim in this chapter 11 case (the "Bar Date") (D.I. 1721). On July 9, 2007, the Debtors' claims and noticing agent, Xroads Case Management Service LLC (the "Claims Agent"), filed a Declaration of Service, stating that it mailed a copy of the *Notice of Bar Date* (the "Bar Date Notice") and a

---

[3] Citations to the transcript of the evidentiary hearing held on July 12, 2012 are cited herein as "Tr." together with reference to the appropriate page and line numbers.

[4] The Trustee is the custodian for the Debtors' books and records. (Tr. 25:22 - 26:1).

proof of claim form substantially similar to Official Form No. 10 to "parties listed on the Master Mailing Matrix as set forth on a list maintained by Debtors' counsel." (D.I. 1861). The Bar Date Order provided that "[t]he Debtors shall cause the Publication Notice to be published once in the national edition of *The Wall Street Journal* and any such other local publications as the Debtors deem appropriate no less than 30 days prior to the General Bar Date." (Bar Date Order, ¶18). On August 3, 2007, the Claims Agent filed affidavits of publication stating that it had published the Bar Date Notice in the *Wall Street Journal* (National Edition) and the *Orange County Register* on July 23, 2007. (D.I. 2148 and D.I. 2149).

On November 20, 2009, the Court entered an Order confirming the Modified Second Amended Joint Chapter 11 Plan of Liquidation (the "Modified Plan") (D.I. 9905).[5] The Modified Plan adopted, ratified and confirmed the New Century Liquidating Trust Agreement, dated as of August 1, 2008, which created the Trust and appointed the Trustee.

(3)     The Silva Adversary and the Proof of Claim Motion

On September 16, 2011, Mr. Silva commenced this adversary proceeding by filing a Complaint, *pro se*, against the Debtors which contains seven counts[6] arising out of a pre-petition

---

[5]This Court entered an Order Confirming the Second Amended Joint Chapter 11 Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors Dated as of April 23, 2008 (the "Confirmation Order") on July 15, 2008 (D.I. 8596), which became effective on August 1, 2008. An appeal was taken and, on July 16, 2009, the United States District Court for the District of Delaware issued a Memorandum Opinion reversing the Confirmation Order. On July 27, 2009, the Bankruptcy Court entered the Order Granting Motion of the Trustee for an Order Preserving the Status Quo Including Maintenance of Alan M. Jacobs as Liquidating Trustee, Plan Administrator and Sole Officer and Director of the Debtors, Pending Entry of a Final Order Consistent with the District Court's Memorandum Opinion (the "Status Quo Order") (D.I. 9750). On September 30, 2009, the New Century Liquidating Trust filed the Modified Plan.

[6]The seven counts in the Complaint are: (i) fraudulent conveyance; (ii) violation of Chapter 11 of the Bankruptcy Code; (iii) Fraudulent Misrepresentation and Negligence, (iv) violation of the Truth-in-Lending Act, 15 U.S.C. §1601 *et seq.*, (v) violation of the California Business and Professions Code Section 17200 *et seq*, (vi) violation of RESPA, (12 U.S.C. §2605); and (vii) Quiet Title to Real Property against all Defendants.

consumer mortgage loan transaction between debtor New Century Mortgage Corporation ("NCMC") and Mr. Silva. Attached as Exhibit "A" to the Complaint is a proof of claim form signed by Mr. Silva asserting a claim in the amount of $18 million against the Debtors based upon the counts asserted in the Complaint. On the same date, Mr. Silva filed the Proof of Claim Motion. The Trustee filed a Motion to Dismiss the Complaint (D.I. 5) and an objection to the Proof of Claim Motion (D.I. 7).

The Court entered a Scheduling Order dated November 11, 2011 setting discovery deadlines and scheduling an evidentiary hearing to consider the Proof of Claim Motion (the "Scheduling Order") (D.I. 11). Because whether Mr. Silva should be permitted to file a late claim is a threshold issue, the Scheduling Order limited the discoverable issues and the evidentiary hearing only to issues regarding Mr. Silva's request to file a late proof of claim and did not provide for discovery related to the merits of the claims set forth in the Complaint. (*Id.*). Although the Trustee timely filed and served responses to Mr. Silva's discovery requests, Mr. Silva did not respond to the Trustee's discovery requests. The Trustee complied with the deadline for exchanging lists of exhibits and witnesses (the "Pretrial Information") prior to the evidentiary hearing, but Mr. Silva did not.

The evidentiary hearing was adjourned to a later date, but Mr. Silva's failure to provide any discovery or Pretrial Information continued. Eventually, after requests by email and letter went unanswered, the Trustee filed a motion to preclude Mr. Silva from introducing evidence at the evidentiary hearing pursuant to Fed.R.Bankr.P. 7037 and 9014(c) and Local Rule 7026-1 (the "Preclusion Motion") (Main Case D.I. 10746). Mr. Silva did not respond to the Preclusion Motion. At a hearing on March 1, 2012, to consider, *inter alia*, the Preclusion Motion, and at

which Mr. Silva appeared by telephone, the Court conducted an extended colloquy with Mr. Silva during which I explained that while the Court should give - - and had given - - aid to *pro se* litigants, including Mr. Silva, he was still obligated to comply with proper discovery requests made by the Trustee in opposition to Mr. Silva's claim. (Tr. 3/1/12 19:13 - 24:11). At the March 1, 2012 hearing, Mr. Silva said:

> Again, I just want to make it clear and for the record that I have no intention, because of my mistake, that was my failure to respond. I have no intentions of submitting witnesses or any evidence, or something other than hasn't been spoken to or part of the record already. [*sic*]

(Tr. 3/1/12 23:20 - 23:25). Ultimately, because of Mr. Silva's stated intention *not* to produce any evidence at an evidentiary hearing, the Court granted the Preclusion Motion by Order dated June 6, 2012 (Main Case D.I. 10924).

The evidentiary hearing was postponed a number of times, often at the request of Mr. Silva, and eventually the hearing was scheduled on a "must be tried" basis for July 12, 2012 (Main Case D.I. 10914) (the "Hearing"). Mr. Silva appeared by telephone and presented legal argument at the Hearing.

## DISCUSSION

In the Proof of Claim Motion, Mr. Silva argues that the tardy filing of his proof of claim was due to excusable neglect. "Even when notice satisfies constitutional requirements, a creditor who does not receive actual notice - - or who receives it but for some reason does not timely act upon it - - may seek leave to file a late claim based on 'excusable neglect.'" *In re U.S. Airways, Inc.*, 2005 WL 3676186, *6 (Bankr.E.D.Va. Nov. 21, 2005). Bankruptcy Rule 9006(b)(1) provides in relevant part:

> [W]hen an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if the request therefore is made before the expiration of the period originally prescribed or as extended by a previous order, or (2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

Fed.R.Bankr.P. 9006(b)(1). The burden of proving excusable neglect lies with the late-claimant. *Jones v. Chemetron Corp.*, 212 F.3d 199, 205 (3d Cir. 2000) ("*Chemetron II*").

The United States Supreme Court articulated the now well-known excusable neglect standard in *Pioneer Inv. Serv. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). When deciding whether a party's neglect of a deadline was "excusable," the *Pioneer* Court held that the determination was "an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id.* at 395. The *Pioneer* Court then listed four factors for consideration: (i) the danger of prejudice to the debtor; (ii) the length of the delay and its potential impact on judicial proceedings; (iii) the reason for the delay, including whether it was within the reasonable control of the movant; and (iv) whether the movant acted in good faith. *Id.* "All factors must be considered and balanced; no one factor trumps the others." *Hefta v. Off'l Comm. Of Unsecured Creditors (In re American Classic Voyages Co.)*, 405 F.3d 127, 133 (3d Cir. 2005) citing *George Harms Constr. Co., Inc. v. Chao*, 371 F.3d 156, 164 (3d Cir. 2004).

(A)     <u>Prejudice</u>

The first *Pioneer* factor, prejudice, does not refer to an imagined or hypothetical harm; a finding of prejudice should be a conclusion based on the facts in evidence. *Manus Corp. v. NRG Energy, Inc. (In re O'Brien Envtl Energy, Inc.)*, 188 F.3d 116, 127 (3d Cir. 1999) . When

addressing the issue of prejudice under the *Pioneer* test, the *O'Brien* Court discussed several relevant considerations, including: (i) whether the debtor was surprised or caught unaware by the assertion of a claim that it had not anticipated; (ii) whether payment of the claim would force the return of amounts already paid out under the confirmed plan or affect the distribution to creditors; (iii) whether payment of the claim would jeopardize the success of the debtor's reorganization; (iv) whether allowance of the claim would adversely impact the debtor; and (v) whether allowance of the claim would open the floodgates to other late claims. *Pro-Tec Serv., LLC v. Inacom Corp. (In re Inacom Corp.)* No. 00-2426, 2004 WL 2283599 at *4 (D.Del. Oct. 4, 2004) *citing O'Brien Envtl.*, 188 F.3d at 126-28.

The Trustee argues that allowing untimely claims, such as Mr. Silva's, will cause prejudice to the Trust. The Trustee testified without contradiction that the Debtors' books and records did not show any debt owed to Mr. Silva or that any correspondence or complaint had been received from Mr. Silva notifying the Debtors of a potential claim. (Tr. 27:11 - 28:7). *Cf. O'Brien Envtl*, 188 F.3d at 128 (finding that there was no question that the debtors were aware of the claim, which had been scheduled and had been discussed by the parties prior to the plan's effective date), *Pro-Tec,* 2004 WL 2283599 (finding no surprise when the debtor had listed claimant on its schedules), *In re Garden Ridge Corp.,* 348 B.R. 642, 646 (Bankr.D.Del. 2006) (same). Nothing in this record supports a finding that the Debtors anticipated - - or should have anticipated - - Mr. Silva's $18 million claim.

In the Proof of Claim Motion, Mr. Silva argues that allowing his late-filed claim will not prejudice the estate because the Trustee is still in the process of resolving claims and has not made any distribution to creditors. The record does not support this argument. The Trustee

testified that he made interim distributions to creditors in December 2010 and in June 2011. (Tr. 21:17 - 21:21). The Trustee also testified that, despite administering over 4,000 claims, fewer than 30 claims remained in dispute as of the second distribution. (Tr. 22:7 - 22:9). The Trustee argued that the Trust will incur significant time and costs to dispute the merits of an $18 million claim, if the late-filed claim is allowed. (Tr. 31:2 - 31:12).

Because this is a liquidating chapter 11 case, there is no possibility of prejudice to the Debtors' "reorganization," but disruption to the Trustee's efforts to complete distribution under the Modified Plan has already occurred. Most of the remaining claim objections address late claims filed by borrowers.

Earlier in the Debtors' bankruptcy case, I noted that allowance of late-filed claims might open the floodgates to filings of similar claims:

> As the Court is already aware from this and other similar matters now before it in the New Century case, allowance of late-filed claims in this case unquestionably will open a floodgate to similar claims by other borrowers. In fact, as evidenced by the number of pending objections to "late claims" and motions to allow "late claims," the flow has already begun.

*In re New Century TRS Holdings, Inc.*, 465 B.R. 38, (Bankr.D.Del. 2012). At the evidentiary hearing, the Trustee testified that the continuous filing of late claims prejudices the Trust by adding administrative costs and causing significant delay to wind-up the estate. (Tr. 31:13 - 31:24). Such prejudice was discussed by the *U.S. Airways* Court:

> The establishment and enforcement of a bar date for filing claims "furthers the policy of finality designed to protect the interests of a debtor and his diligent creditors and the expeditious administration of the bankruptcy case." *In re Peters*, 90 B.R. 588, 597 (Bankr. N.D.N.Y. 1988). Furthermore, "to allow the debtor to be continually pursued by his creditors ad infinitum ... would be to sanction a form of slow torture contrary to the spirit and purposes of the bankruptcy laws." *Id.* (quoting *Maine Bonding & Casualty Co. v. Grant (In re Grant)*, 45 B.R. 262, 264

(Bankr.D.Me.1984)).

> In the instant case, the debtor would be prejudiced by allowing the [claimants] to assert their claim six months after the bar date had passed, particularly in a case as large as this. As noted above, U.S. Airways provided mailed notice to all known creditors and notice by publication to all "unknown" claimants of the applicable bar date. Following passage of the bar date, the debtor should reasonably be able to assume that all claimants needing to be dealt with in the plan have come forward to vindicate their rights, thereby allowing the debtor to calculate its potential liabilities for purposes of effectuating its reorganization. If the court were to allow the [claimants] to file a late claim solely because they were unaware of the bankruptcy filing, it is difficult to see on what basis the court could deny the same relief to dozens or perhaps hundreds of creditors who might now come forward and assert a previously unknown claim. Such a policy would, in effect, allow any creditor who has neglected to comply with a bar date to seek an extension on the grounds of excusable neglect because it did not read the notice. Hence, notice of a bar date by publication would be rendered a useless means of establishing a date by which all claims must be filed or forever barred. *In re Best Products Co., Inc.*, 140 B.R. 353, 359 (Bankr.S.D.N.Y.1992).

*U.S. Airways*, 2005 WL 3676186 at *7 - *8. These considerations are equally applicable to the case at bar. Preventing the continuing submission of late claims will permit the Trustee to finalize administration of the Trust and move to close the cases. (Tr. 22:14 - 22:25). The record before me supports the conclusion that the Trust would suffer prejudice if Mr. Silva's late-filed is permitted.

(B) <u>Length of delay and impact on judicial proceedings</u>

The second *Pioneer* factor to consider is the length of the delay in filing the proof of claim and the impact of the delay on the judicial proceedings. Mr. Silva filed his claim *four years* after the Bar Date. As discussed above, the impact of allowing a late-filed claim at this juncture in the case would render the Bar Date meaningless; the continuous filing of late claims prevents the Trustee from completing distributions under the Modified Plan to creditors with timely-filed claims.

(C)    Reason for the delay, including whether it was within the reasonable control of the movant.

Mr. Silva argues that his late filing is excusable because the Debtors failed to provide him with adequate notice of the bankruptcy filing and the Bar Date. He argues that he acted reasonably by filing his claim as soon as he became aware of the Debtors' bankruptcy filing.[7] The Trustee argues that Mr. Silva was an unknown creditor of the Debtors at the time the Bar Date Notice was served and, therefore, notice by publication was constitutionally sufficient.

The purpose and procedures for setting a claims bar date were aptly discussed by my colleague, Judge Gross, in *In re Smidth & Co.*, 413 B.R. 161 (Bankr.D.Del. 2009):

> Rule 3003(c)(3) of the Federal Rules of Bankruptcy Procedure authorizes courts to set bar dates by which proofs of claim or interest may be filed. This rule contributes to one of the main purposes of bankruptcy law, securing, within a limited time, the prompt and effectual administration and settlement of the debtor's estate. Setting an outside limit for the time to assert a right triggers due process concerns of which every court must be cognizant. This concern is resolved through notice: when a debtor provides proper notice to its creditors, due process is satisfied, and a court can bar creditors from asserting claims. What qualifies as proper notice, however, is dependent upon whether the creditor is known or unknown. If a creditor is known, the debtor must provide actual notice of the bankruptcy proceedings, whereas if the creditor is unknown, notice by publication is sufficient.

*Id.* at 165 citing, *inter alia*, *City of New York v. New York, N.H. & H.R. Co.*, 344 U.S. 293, 297, 73 S.Ct. 299, 97 L.Ed. 333 (1953), *Chemetron Corp. v. Jones*, 72 F.3d 341, 346 (3d Cir. 1995). For creditors who receive the required notice, the bar date is a "drop-dead date" that prevents a creditor from asserting prepetition claims unless he can demonstrate excusable neglect. *Berger v. TransWorld Airlines, Inc. (In re TransWorld Airlines, Inc.)*, 96 F.3d 687, 690 (3d Cir. 1996).

---

[7]While the Court accepts Mr. Silva's assertion that he did not receive actual notice of the Bar Date, a proposition apparently not disputed by the Trustee, as discussed above, Mr. Silva offered no sworn testimony or other evidence in support of his claim of "excusable neglect."

10

In *Chemetron*, the Third Circuit Court of Appeals defined a "known" creditor as one whose identity is either known or "reasonably ascertainable" by the debtor. *Chemetron*, 72 F.3d at 346 citing *Tulsa Professional Collection Serv., Inc. v. Pope*, 485 U.S. 478, 108 S.Ct. 1340, 1347, 99 L.Ed.2d 565 (1988). The *Chemetron* Court further explained:

> A creditor's identity is "reasonably ascertainable" if that creditor can be identified through "reasonably diligent efforts." *Mennonite Bd. Of Missions v. Adams*, 462 U.S. 791, 798 n.4, 103 S.Ct. 2706, 2711 n.4, 77 L.Ed.2d 180 (1983). Reasonable diligence does not require "impracticable and extended searches . . . in the name of due process." *Mullane*, 339 U.S. at 317, 70 S.Ct. at 659. . . . . The requisite search instead focuses on the debtor's own books and records. Efforts beyond a careful examination of these documents are generally not required.

*Id.* at 346-47. On the other hand, an "unknown" creditor is one whose "interests are either conjectural or future or, although they could be discovered upon investigation, do not in due course of business come to knowledge [of the debtor]." *Chemetron*, 72 F.3d at 346 quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 317, 70 S.Ct. 652, 659, 94 L.Ed. 865 (1950).

The Trustee testified without contradiction that the Debtors' books and records did not show any debt owed to Mr. Silva or any notice from Mr. Silva of a potential claim. (Tr. 27:11 - 28:7). Neither the Debtors nor the Trust received any indication of a claim by Mr. Silva until three years after the Bar Date, upon receipt of a letter to the Debtors dated December 7, 2010, written on Mr. Silva's behalf, and alleging fraud, predatory lending and other causes of action. (Tr. 28:8 - 29:2, *see* Trustee Ex. 9). On January 19, 2011, the Trust responded to the letter and advised Mr. Silva of the Debtors' bankruptcy filing. (*Id.*).

Mr. Silva was an unknown creditor at the time the Bar Date Notice was served. Nothing in the record before me suggests that Mr. Silva's claim could have been "discovered upon

investigation," or is a claim that "in the due course of business [came] to knowledge of" the Debtors. *Chemetron*, 72 F.3d at 346. Notice by publication generally suffices to meet due process standards for unknown creditors. *Chemetron*, 72 F.3d at 346. Specifically, in a previous decision in the Debtors' bankruptcy case, I concluded that the Debtors' publication of the Bar Date Notice in the national edition of the *Wall Street Journal*, supplemented with notice published in the *Orange County Register*, satisfied due process requirements for unknown creditors. *In re New Century TRS Holdings, Inc.*, 2013 WL 4671734, *8 (Bankr.D.Del. Aug. 30, 2013).

Because Mr. Silva was an unknown creditor, he was not entitled to actual notice of the Bar Date. Because he received constitutionally adequate notice of the Bar Date by publication, his delay in filing a proof of claim four years after the Bar Date (and nine months after being advised of the Debtors' bankruptcy filing) does not constitute excusable neglect.

(D)   Good faith of the movant

There is nothing in the record to indicate that Mr. Silva acted in bad faith.

Upon consideration of the *Pioneer* factors in light of the totality of the circumstances in this case, I conclude that Mr. Silva has failed to show that the late filing of his claim was due to excusable neglect.

## CONCLUSION

For the reasons set forth above, Mr. Silva's Proof of Claim Motion will be denied. In light of the disposition of the Proof of Claim Motion, the Complaint will be dismissed. *Robert Christopher Assoc. v. Franklin Realty Group, Inc. (In re FRG, Inc.)*, 121 B.R. 710, 714 (Bankr.E.D.Pa. 1990) ("Clearly, a creditor cannot circumvent the temporal proscription of a bar

date by the facile device of filing an adversary proceeding against a debtor after the bar date has run."); *see also* In re Grand Union Co., 204 B.R. 864, 871 (Bankr. D.Del. 1997) ("[T]he claims bar date operates as a federally created statute of limitations, after which the claimant loses all of her right to bring an action against the debtor.").

    An appropriate Order follows.

                      BY THE COURT:

                        _____
                      KEVIN J. CAREY
                      UNITED STATES BANKRUPTCY JUDGE

Dated: March 7, 2014